# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JOHNNY W.,[1]

      **Plaintiff,**

                                  **Case No. 3:23-cv-2377**

    **v.**                                **Magistrate Judge Norah McCann King**

**FRANK BISIGNANO,[2]**
**Commissioner of Social Security,**

      **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Johnny W. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

## I.     PROCEDURAL HISTORY

On April 16, 2021, Plaintiff filed his applications for disability insurance benefits and supplemental security income, alleging that he has been disabled since February 19, 2021. R. 58, 66, 74, 82, 186–209. The applications were denied initially and upon reconsideration. R. 98–107, 111–17. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 118–20. ALJ Leonard Costa held a hearing on August 25, 2022, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 31–57. In a decision dated August 30, 2022, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 19, 2021, Plaintiff's alleged disability onset date, through the date of that decision. R. 16–25. That decision became final when the Appeals Council declined review on March 29, 2023. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 11, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 6.[3] On February 15, 2024, the case was reassigned to the undersigned. ECF No. 14. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham.");
*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,
2016).  The Court has a duty to "review the evidence in its totality" and "take into account
whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting
*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

4

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 53 years old on February 19, 2021, his alleged disability onset date. R. 23. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. *Id*. Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2026. R. 19.

At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine and morbid obesity are severe impairments. *Id*. The ALJ also found that Plaintiff's diabetes mellitus and hypertension were not severe. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 19–20.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 20–23. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a home health aide. R. 23.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g*., jobs as an office helper, a routine clerk, and an assembler of

small parts—existed in the national economy and could be performed by Plaintiff despite his

reduced RFC. R. 23–24. The ALJ therefore concluded that Plaintiff was not disabled within the

meaning of the Social Security Act from February 19, 2021, his alleged disability onset date,

through the date of the decision. R. 24–25.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the

Commissioner be reversed and remanded for further proceedings. *Plaintiff's Memorandum of

Law,* ECF No. 9; *Plaintiff's Reply Brief*, ECF No. 13. The Commissioner takes the position that

his decision should be affirmed in its entirety because the ALJ's decision correctly applied the

governing legal standards, reflected consideration of the entire record, and was supported by

sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 12.

## IV.   SUMMARY OF RELEVANT MEDICAL EVIDENCE

On May 4, 2022, Oscar Perez Gutierrez, M.D., Plaintiff's treating physician, completed a

check-the-box and fill-in-the-blank "Physical Impairment Questionnaire." R. 593–95, Exhibit

16F ("physical impairment opinion"). Dr. Gutierrez diagnosed Plaintiff with scoliosis, moderate

severe thoracic spondylosis, and stated that Plaintiff's prognosis was guarded. R. 593. Plaintiff's

symptoms of persistent low back pain and bilateral lower extremity weakness were severe

enough to "[c]onstantly" interfere with the attention and concentration required to perform

simple work-related tasks *Id*. Plaintiff would need to recline or lie down during a hypothetical 8-

hour workday in excess of the typical 15-minute break in the morning, the 30–60-minute lunch,

and the typical 15-minute break in the afternoon. *Id*. Dr. Gutierrez opined that Plaintiff could

walk less than 1 city block without rest or significant pain; sit for up to 10 minutes at one time

for a total of 2 hours in an 8-hour workday; and walk/stand for up to 10 minutes at one time for a

total of 0 hours in an 8-hour workday. *Id*. Plaintiff did not need a job that permitted shifting

positions at will from sitting, standing, or walking. *Id*. Plaintiff would need to take unscheduled breaks during an 8-hour workday, but when asked how often Plaintiff would need those breaks, Dr. Gutierrez responded, "N/A due to persistence of pain." *Id*. Dr. Gutierrez opined that Plaintiff could occasionally (meaning less than one-third of an 8-hour workday) lift and carry less than 10 pounds. R. 594. In an 8-hour workday, Plaintiff could grasp, turn, twist objects with his hands the entire time; could use his fingers for fine manipulation 90% of the time; but could use his arms for reaching only 30% of the time. *Id*. Plaintiff was likely to be absent from work as a result of his impairments or treatment more than four times per month. *Id*. Plaintiff's "impairments (physical impairments plus any emotional impairments) were reasonably consistent with the symptoms and functional limitations described in the evaluation." *Id*. According to Dr. Gutierrez, Plaintiff was not "physically capable of working an 8-hour day, 5 days a week employment on a sustained basis[.]" *Id*. Dr. Gutierrez reported that he had treated Plaintiff since January 12, 2021, and that Plaintiff's limitations and restrictions had existed since February 12, 2021. R. 595.

Also on May 4, 2022, Dr. Gutierrez completed a check-the-box and fill-in-the-blank form entitled, "Mental Impairment Questionnaire." R. 589–92, Exhibit 15F ("mental impairment opinion"). This questionnaire instructed, in order

> [t]o determine this individual's ability to do <u>work-related activities on a day-to-day basis in a regular work setting</u>, please give us an assessment, <u>BASED ON YOUR EXAMINATION</u>, of how the individual's mental/emotional capabilities are affected by any of the patient's diagnosed impairments. Consider the medical history, the chronicity of the findings (or lack thereof), and the expected duration of any limitations. <u>DO NOT CONSIDER</u> factors such as the individual's age, education, or past work experience. These factors will be considered at other points in the disability determination process.

R. 589 (emphasis in the original). The questionnaire directed further as follows:

> In each area of functioning, please Indicate the DEGREE OF LIMITATION resulting from PSYCHOLOGICAL FACTORS only. Rate the limitations on a continuum using the terms defined below:

NONE: Absent or minimal limitations. If limitations are present they are transient and/or expectable reactions to psychological stresses.

SLIGHT: There is some mild limitation In this area, but the individual can generally function satisfactorily.

MODERATE: The individual will have intermittent difficulty performing in this area. The individual can generally perform satisfactorily in this area but not always.

MARKED: There is serious limitation in this area. The individual cannot generally perform satisfactorily in this area.

EXTREME: There is major limitation in this area. There is no useful ability to function in this area.

UNKNOWN: Unable to assess limitations based on examination or review of medical records.

*Id*. (emphasis in the original). In the area of understanding and memory, Dr. Gutierrez opined that Plaintiff had slight limitations in his ability to understand and remember detailed instructions, but no limitation in his abilities to remember locations and work-like procedures and to understand and remember very short and simple instructions. *Id*. In the area of sustained concentration and persistence, Dr. Gutierrez opined that Plaintiff had an extreme limitation in his ability to complete a normal workweek without interruptions from psychologically based symptoms; marked limitations in his abilities to work in coordination with or in proximity to others without being distracted by them, to complete a normal workday without interruptions from psychologically based symptoms, and to perform at a consistent pace with a standard number and length of rest periods; a moderate limitation in his ability to make simple work-related decisions; and slight limitations in his abilities to carry out detailed instructions, maintain attention and concentration for extended periods, and perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance; but no limitation in his ability to carry out very short and simple instructions and to sustain an ordinary routine without

special supervision. R. 589–90. Plaintiff was likely to have four or more absences in an average month. R. 590. In the area of social interaction, Dr. Gutierrez opined that Plaintiff had marked limitations in his abilities to interact appropriately with the general public and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and had moderate limitations in his abilities to ask simple questions or request assistance, to accept instructions and respond appropriately to criticism from supervisors, and to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. *Id*. In the area of adaptation, Dr. Gutierrez opined that Plaintiff had a moderate limitation in his ability to set realistic goals or make plans independently of others; and slight limitations in his abilities to respond appropriately to changes in the work setting, to be aware of normal hazards and take appropriate precautions, and to travel in unfamiliar places or use public transportation. R. 591. Again, Dr. Gutierrez stated that these limitations and restrictions had existed since February 12, 2021. R. 592.

## V.    DISCUSSION

Plaintiff challenges, *inter alia*, the ALJ's failure to consider Dr. Gutierrez's mental impairment opinion when crafting the RFC. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 19–21. Plaintiff's challenge is well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v.*

*Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[4] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.927c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and

---

[4] As previously noted, Plaintiff's claims were filed on February 19, 2021.

consistency (paragraph (c)(2) of this section)." *Id*. at §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(1), 416.920c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2), 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at §§ 404.1520c(b), 416.920c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors.").

In the present case, the ALJ found at step four of the sequential evaluation that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20

CFR 404.1567(b) and 416.967(b), except the claimant can stand for a total of six hours in a typical 8-hour day, but only for one-half hour at a time before needing to sit for two minutes. Additionally, the claimant can occasionally climb ramps and stairs, stoop, kneel, crouch, balance and crawl, but never climb ladders, ropes or scaffolds. Furthermore, the claimant can occasionally push or pull controls with the lower extremities.

R. 20. In reaching this determination, the ALJ considered, but discounted, Dr. Gutierrez's opinion relating to Plaintiff's physical impairments:

In a physical impairment questionnaire dated May 4, 2022, Dr. Oscar A. Perez Gutierrez, M.D., assessed the medical record and opined that the symptoms associated with the impairments were severe enough to constantly interfere with the attention and concentration required to perform simple work-related tasks (Ex. 16F, 1). Additionally, the claimant would need to recline or lie down during an 8-hour workday in excess of the typical morning, afternoon and lunch break (Ex. 16F, 1). Furthermore, Dr. Gutierrez opined that the claimant was limited to sitting a total of two hours in an eight-hour workday and would not be able to stand any time (Ex. 16F, 1). The claimant would be limited to lifting and carrying less than ten pounds occasionally, fingering ninety percent of the time bilaterally and reaching thirty percent of the time bilaterally (Ex. 16F, 2). Lastly, the claimant would be absent more than four times per month and would not be physically capable of working an 8-hour day, 5 days a week on a sustained basis (Ex. 16F, 2). In making a disability determination, this opinion is not persuasive, as it is inconsistent with the totality of the medical record. First, the opinion is inconsistent with the claimant's own testimony that his pain is decreased on medications. Additionally, the opinion is inconsistent with the generally moderate diagnostic and clinical findings that showed some decreased range of motion, but no sensory loss, full range of motion of the upper and lower extremities, along with the claimant's lack of an assistive device.

R. 22.

Plaintiff argues that the ALJ's decision is flawed because the ALJ failed to evaluate Dr. Gutierrez's opinion relating to Plaintiff's mental impairments. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 19–21. Plaintiff specifically argues that Dr. Gutierrez's opinions addressed "two entirely separate areas of functionality, and a physical [assessment] of evidence does not apply to a mental capacity assessment. There is no logical bridge between the evidence as applied to Plaintiff's exertional limitations and mental capacity assessment." *Id*. at 20. This error, Plaintiff

14

argues, was not harmless because, *inter alia*, the doctor's off-task limitations, if credited, would render Plaintiff disabled. *Id*. at 20–21 (citing R. 54 (reflecting hearing transcript with vocational expert testimony regarding such limitation).

The Commissioner disagrees, arguing that the current applicable regulations permit a "source-level" discussion of medical opinion evidence, *Defendant's Brief*, ECF No. 12, p. 13 (citing 20 C.F.R. § 404.1520c(b)(1)), and that Dr. Gutierrez' opinion, reflected in his physical impairment opinion, that Plaintiff's impairments "caused mental issues, such as issues with attention and concentration" rendered the ALJ's evaluation proper. *Id*. (citing R. 593). According to the Commissioner, the ALJ's discussion of the doctor's opinion relating to Plaintiff's physical impairments was a "sufficient" "source-level articulation . . . under the applicable regulatory scheme" to cover the analysis of the doctor's opinion relating to Plaintiff's mental impairments. *Id.* The Commissioner also attacks the sufficiency of Dr. Gutierrez' mental impairment opinion itself. *Id*. (arguing that the check-the-box format constitutes weak evidence and that the opinion lacks diagnoses) (citations omitted).

Defendant's arguments are not well taken. It is true that the applicable regulations permit an ALJ to articulate consideration of multiple medical opinions from the same medical source in "a single analysis," using the regulatory factors. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1);[5]

---

[5] Source-level articulation. Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

*see also Redenbaugh v. Dudek*, No. CV 24-205, 2025 WL 964020, at *1 n.2 (W.D. Pa. Mar. 31, 2025) (finding the ALJ's "consistency and supportability analysis was adequate and complied with the relevant regulations" where the ALJ addressed two of four opinions from the same source because "[t]he two opinions not discussed by the ALJ did not differ materially from the two that the ALJ did address"). "However, '[w]hile 'it is certainly the case that the applicable regulation requires only 'source-level articulation'], the new regulations have not upended the established demands of the substantial evidence standard which requires that any rejection of relevant evidence be explicit so as to be reviewable.'" *Lawrence v. Kijakazi*, No. 22-CV-4995, 2023 WL 7129950, at *9–10 (E.D. Pa. Oct. 30, 2023) (quoting *Prodin v. Kijakazi*, No. 20-1372, 2022 WL 973703, at *5 n.2 (M.D. Pa. Mar. 31, 2022)) (citing *Cotter*, 642 F.2d at 706-07); *see also Moore v. Kijakazi*, No. 1:21-CV-1769, 2023 WL 1973210, at *10 (M.D. Pa. Feb. 13, 2023) ("While we appreciate the Commissioner's argument that the analytical paradigm that applies to evaluating medical opinions fundamentally changed in March of 2017, in our view that change does not alter the significance of medical opinion evidence to a disability analysis. Nor does that paradigm shift discount the longstanding legal principles which called for a clear articulation of the ALJ's rationale in making a disability determination.").

In this case, the ALJ's analysis of Dr. Gutierrez's opinion relating to Plaintiff's physical impairments does not provide a sufficient articulation for the Court to review the ALJ's consideration of that physician's opinion relating to Plaintiff's mental impairments. The ALJ relied on medical evidence regarding Plaintiff's physical impairments—*i.e.,* pain, range of motion, no sensory loss, and no use of an assistive device—when discounting, as inconsistent with the record, Dr. Gutierrez's physical impairment opinion. R. 22. However, the doctor's

---

*Id*.

mental impairment opinion was expressly limited to an assessment of the limitations "resulting from PSYCHOLOGICAL FACTORS only." R. 589 (emphasis in the original). Moreover, while Dr. Gutierrez's physical impairment opinion concluded that Plaintiff's symptoms of persistent low back pain and bilateral lower extremity weakness were severe enough to constantly interfere with his attention and concentration, R. 593, his mental impairment opinion concluded, *inter alia*, that Plaintiff's "psychologically based symptoms" markedly limited his ability to complete a normal workday and extremely limited his ability to complete a normal workweek. R. 590. Furthermore, Dr. Gutierrez's opinions addressed different functional areas: his physical impairment opinion mentioned a limitation in the area of attention and concentration, R. 593, but his mental impairment opinion addressed not only that functional area, but also, *inter alia*, the area of social interaction, R. 590. Notably, Dr. Gutierrez opined that Plaintiff was markedly limited in his abilities to interact appropriately with the general public and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. R. 590. In short, the ALJ's discussion of Dr. Gutierrez's physical impairment opinion—and the basis for discounting that opinion—does not provide sufficient analysis to permit this Court to conclude that the ALJ adequately considered the physician's opined mental limitations. *See Lawrence*, 2023 WL 7129950, at *9–10; *cf. Redenbaugh*, 2025 WL 964020, at *1 n.2.

Moreover, the Court cannot conclude that the ALJ's error in this regard is harmless because it is unclear to what extent this error infected the ALJ's determination of Plaintiff's RFC. As detailed above, Dr. Gutierrez opined that Plaintiff was markedly or extremely limited in several categories under the functional areas of sustained concentration, persistence, and social interaction. R. 590. The RFC, however, contains no restrictions arising out of any such mental limitations. R. 20. Thus, the Court cannot meaningfully review the ALJ's RFC finding, nor can it

determine whether substantial evidence supports that finding. *Cf. Gonzalez v. Comm'r of Soc. Sec.*, No. CV 17-5131, 2018 WL 5307818, at *1−2 (D.N.J. Oct. 26, 2018) (remanding action where "[t]he ALJ overlooked this significant medical evidence from a treating physician" and that evidence is inconsistent with the ALJ's RFC that the plaintiff could perform sedentary work).

To the extent that the Commissioner attacks the merits of Dr. Gutierrez' mental impairment opinion, "[t]he Court is only permitted to consider the ALJ's decision based on the rationale contained in that decision; the Court is not to consider hypothetical rationales, which may justify the ALJ's decision, but which were not in fact underlying the opinion in question." *Rhodes v. Comm'r of Soc. Sec.*, No. CV 18-0678, 2019 WL 1042532, at *6 (D.N.J. Mar. 5, 2019) (citation omitted). Notably, although Dr. Gutierrez' physical impairment opinion was also in a checkbox format, R. 593–95, the ALJ did not reject that opinion on that basis. R. 22. The Court must therefore reject the Commissioner's *post hoc* rationalization in this regard. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("Our review must also be based on 'the administrative record [that was] already in existence' before the agency, not 'some new record made initially in the reviewing court' or 'post-hoc rationalizations' made after the disputed action.") (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir. 1999)); *Fargnoli*, 247 F.3d at 44 n.7 (3d Cir. 2001) (stating that a district court should not substitute its own independent analysis for reasoning not mentioned by the ALJ) (citations omitted).

This Court therefore concludes that remand of the matter for further consideration is appropriate.[6] Moreover, remand is appropriate even if, upon further examination of Dr. Gutierrez's mental impairment opinion and consideration of the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

---

[6] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Gutierrez's mental impairment opinion and of the RFC determination, the Court does not consider those claims.

## VI.    CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  July 15, 2025                              *s/Norah McCann King*
                                        NORAH McCANN KING
                                        UNITED STATES MAGISTRATE JUDGE

20